**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:22-cv-20054-DPG**

ROBERT DOYLE, individually
and on behalf of all others similarly situated,   **CLASS ACTION**

    *Plaintiff*,

vs.

SUNSHINE STATE HEALTH PLAN, INC.,   **JURY TRIAL DEMANDED**

    *Defendant*.
_____/

## AMENDED CLASS ACTION COMPLAINT

Plaintiff, Robert Doyle (hereinafter "Plaintiff"), brings this class action Sunshine State Health Plan, Inc. ("Sunshine") (or "Defendant"), and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THIS ACTION

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), arising from Defendant's violations of the TCPA and its implementing regulations.

2. To promote its healthcare plans, Defendant engages in unsolicited telemarketing, including prerecorded message calls.

3. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of themselves and Class Members, as defined below, and any other available lewd or equitable remedies resulting from the unlawful actions of Defendant.

1

## PARTIES

4.  Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153 (39).

5.  Defendant is, and at all times relevant hereto was, a Florida corporation and a "person," as defined by 47 U.S.C. § 153 (39), that maintains its primary place if business and headquarters in in Miami, Florida. Defendants direct, markets, and provides business activities throughout the State of Florida.

## JURISDICTION AND VENUE

6.  This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

7.  Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District.

8.  The Court has personal jurisdiction over Defendant because it conducts business in this state, markets its services within this state, and has availed itself to the jurisdiction of the State of Florida by promoting its products and services to persons in this state.

## THE TCPA

9.  The TCPA prohibits: (1) any person form calling a cellular telephone number, (2) using an automatic telephone dialing system or an artificial or prerecorded voice; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(l)(A).

10. The TCPA exists to prevent communications like the ones described within this Complaint. "Voluminous consumer complaints about abuses of telephone technology- for

example, computerized calls dispatched to private homes-prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

11. In an action under the TCPA, a plaintiff must only show that the defendant "'called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, NA*., 857 F. Supp. 2d 1316, 1319 (S.D. Fla.2012), *aff'd,,* 155 F-3d 1265 (11th Cir. 2014).

12. The Federal Communications Commission C'FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Red 14014 (2003).

13. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 4ff 20 (Feb. 15, 2012) (emphasis supplied).

14. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent ... and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of*

*1991,* 27 F.C.C.R. 1830, 1837 ⁋ 18, 1838 ⁋ 20, 1844 ⁋ 33, 1857 ⁋ 66, 1858 ⁋ 71 (F.C.C. Feb. 15, 2012).

15. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(l2). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC,* 788 F.3d 814,820 (8th Cir. 2015).

16. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service" where the implication of an improper purpose is "'clear from the context.'" *Id.* (citing *Hasbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 918 (9th Cir. 2012)).

17. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan,* 788 F.3d at 820 (citing 47 C.F.R. § 64.1200{a)(2)(iii); 47 C.F.R. § 64.1200(f)(l2); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 F.C.C. Red at 140981141, 2003 WL 21517853, at *49).

18. The FCC bas explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCP A. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Red. 14014, ⁋⁋ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future. Id.*

19. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCP A. *See In re Rules and*

4

*Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Red. 14014, ¶ 136 (2003).

20. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

## FACTS

21. For example, on November 27, 2017, Defendant Sunshine called Plaintiff's cellular telephone ending in "4166." Plaintiff answered to a voice recording.

22. Plaintiff was transferred to a live agent, Mirna Morales, who proceeded to offer different healthcare products from Sunshine. The live agent later transferred the call to Kathy, who continued offering healthcare products from Sunshine.

23. Plaintiff received at least seven (7) more calls from Defendants, from August 2017 through November 2017.

24. Several of the calls received by Plaintiff included the identical pre-recorded message.

25. The telemarketing calls were made to Plaintiff's 4166 Number and within the time period that is relevant to this action.

26. At no time did Plaintiff provide Plaintiff's cellular number to Defendant through any medium, nor did Plaintiff consent to receive such unsolicited calls.

27. Plaintiff has never signed-up for, and has never used, Defendant's services, and has never had any form of business relationship with Defendant.

28. Plaintiff is the subscriber and sole user of the 4166 Number and is financially responsible for phone service to the 4166 Number, including the cellular costs and data usage incurred as a result of the unlawful calls made to Plaintiff by Defendant.

29. These calls were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

30. Plaintiff did not provide Defendants or its agents prior express consent to receive calls, including unsolicited calls, to Plaintiff's cellular telephone, pursuant to 47 U.S.C.

31. Defendant's business includes placing outgoing telemarketing calls, either directly, or through authorized agents on its behalf, at the direction of, and/or with the consent of, Defendant, to promote the sale of its plans. At all times material, the caller who called Plaintiff and Class Members was an actual or apparent agent of Defendant, and was acting at the direction of and/or with the authority of Defendant and/or Defendant otherwise ratified the caller's conduct in placing telephone calls to Plaintiff and Class Members for the purpose of selling Defendant's plans.

32. Defendant, directly or through other persons, entities or agents acting on its behalf, including the caller who called Plaintiff, conspired to, agreed to, contributed to, authorized, assisted with, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the subject matter of this Amended Complaint.

33. Plaintiff was damaged by Defendant's calls. In addition to using Plaintiff's residential cellular data, phone storage, and battery life, Plaintiff's privacy was wrongfully invaded, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted calls, forcing Plaintiff to divert attention away from Plaintiff's work and other activities. Not only did the receipt of the robocalls distract Plaintiff away from

Plaintiff's personal activities, Plaintiff was forced to spend time investigating the source of the calls and who sent them to him. *See Muransky v. Godiva Chocolatier, Inc.,* 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact".... "[A] small injury… is enough for standing purposes").

## CLASS ACTION ALLEGATIONS

### PROPOSED CLASS

34. Plaintiff brings this lawsuit as a class action on behalf of himself individually and on behalf of all other similarly situated persons as a class action pursuant to Rules 23(a) and 23(b)(2) & (b)(3) of the Federal Rules of Civil Procedure. The class that Plaintiff seeks to represent is comprised of and defined as:

> **No Consent Class:  All persons within the United States who, within the four years prior to the filing of this Complaint, were called by Defendant or anyone on Defendant's behalf, containing a prerecorded voice or artificial voice to said person's telephone number, advertising Defendant's services, without the recipient's prior express consent.**

35. Excluded from the Class are: any Defendant, and any subsidiary or affiliate of that Defendants, and the directors, officers and employees of that Defendants or its subsidiaries or affiliates, and members of the federal judiciary.

36. Plaintiff does not know the number of members in the Class but believes the Class members numbers in the several thousands, if not more.

### NUMEROSITY

37. Upon information and belief, Defendant has placed prerecorded voice calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

7

38. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW FACT

39. There is a well-defined community of common questions of law and fact affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

   a. Whether Defendant made non-emergency calls to Plaintiff and Class members' telephones using a prerecorded voice;

   b. Whether Defendant can meet its burden of showing that it had express written consent to make such calls;

   c. Whether Defendant's conduct was knowing and willful;

   d. Whether Defendant is liable for damages and the amount of such damages; and

   e. Whether Defendant should be enjoined from such conduct in the future.

40. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits prerecorded vice calls to telephone numbers is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

41. Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

## PROTECTING THE INTERESTS OF THE CLASS MEMBERS

42.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel.  Accordingly. Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

## SUPERIORITY

43.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

44.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## VIOLATIONS OF 47 U.S.C. § 227(b)
### (On Behalf of Plaintiff and the No Consent Class)

45.     Plaintiff re-alleges and incorporates the foregoing allegations as it fully set forth herein.

46. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a …cellular telephone service…" 47 U.S.C. 227(b)(1)(A)(iii).

47. Defendant used an artificial or prerecorded voice to deliver messages to Plaintiff and other Class Members without prior consent.

48. These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call any of these cellular phones.

49. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by initiating telephone calls while using an artificial or prerecorded voice to deliver non-emergency telephone calls to the cellular phones of Plaintiff and the other members of the putative Class without their prior express written consent.

50. The foregoing acts and omissions of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

51. At all relevant times, Defendants knew or should have known that its conduct as alleged herein violated the TCPA.

52. Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

53. Because Defendants knew or should have known that Plaintiff and Class Members did not give prior express consent to receive calls using artificial or prerecorded voice, the Court

should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to § 227(b)(3) of the TCPA.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff individually and on behalf of then Class, prays for then following relief:

a. An order certifying this case as a class action on behalf of the Class, as defied above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class counsel;

b. An order declaring that Defendant's actions, as set out above, violate the TCPA and its implementing regulations;

c. An injunction requiring Defendant to cease all unsolicited prerecorded calling activity, and to otherwise protect the interest of the Class;

d. An injunction prohibiting Defendant from using, or contracting the use of, prerecorded calls without obtaining, recipient's consent to receive calls made with such equipment;

e. A declaration that Defendant's practices described herein violate 47 C.F.R. § 64.1200(c);

f. A declaration that Defendant's violation to of 47 C.F.R. § 64.1200(c); were willful and knowing;

g. An award of actual and statutory damages for Plaintiff and each member of the Class;

h. Reasonable attorney's fees and costs; and

i. Such further and other relief as this Court deems reasonable and just.

## JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: January 14, 2022	Respectfully submitted,

*/s/ Joshua H. Eggnatz*
Joshua H. Eggnatz, Esq. (FBN 0067926)
E-mail: JEggnatz@JusticeEarned.com
Michael J. Pascucci, Esq. (FBN 0083397)
E-mail: Mpascucci@JusticeEarned.com
EGGNATZ | PASCUCCI
7450 Griffin Road, Suite 230
Davie, FL 33314
Telephone: 954-889-3359
Facsimile: 954-889-5913

Seth M. Lehrman (FBN 132896)
E-mail: seth@epllc.com
EDWARDS POTTINGER LLC
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile: 954-524-2822

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system on this 14th day of January 2022, and that a notice of the electronic filing will be transmitted to counsel of record.

*/s/ Joshua Eggnatz*
Joshua H. Eggnatz

## SERVICE LIST

Steven J. Brotman
Florida Bar No. 85750
steven.brotman@lockelord.com
irene.rabba@lockelord.com
chicagodocket@lockelord.com
**LOCKE LORD LLP**
777 South Flagler Drive
Suite 215 East Tower
West Palm Beach, Florida 33401

12

Tel.: (561) 833-7700
Fax: (561) 655-8719

*Counsel for Sunshine State Health Plan, Inc.*